No. 12,952.

STATE OF LOUISIANA VS. CALVIN GUITON.

| 51 | 155 |
| 109 | 574 |

The defendant was found guilty of having committed the offence of incest with. a daughter of his brother. The word "brother" includes a brother of the half-blood, and his daughter was the niece of the defendant.

An information setting forth the crime in language equivalent to the language of the statute is not fatally defective.

In the absence of a bill of exceptions, the Supreme Court assumes that the facts showed to the satisfaction of the trial judge and jury, that the prosecution was not barred by prescription.

The Supreme Court will not interfere, where it appears that the trial judge was satisfied from facts within his knowledge that the evidence was not newly discovered evidence, and, that the defendant had not used diligence.

State vs. Guiton.

ON APPEAL from the Ninth Judicial District Court for the parish of DeSoto.  *Hall, J.*

*M. J. Cunningham,* Attorney General, and *J. B. Lee,* District Attorney, for Plaintiff and Appellee.

*Elam & Egan* for Defendant and Appellant.

Submitted on briefs November 26, 1898.
Opinion handed down December 19, 1898.
Rehearing refused January 23, 1899.

The opinion of the court was delivered by

BREAUX, J.   An information was filed against the defendant on the 18th day of August, 1898, charging him with having committed the crime of incest with one Annie Lee Jackson, alleged to be his niece.

He was tried and found guilty.

From a sentence of ten years' imprisonment in the penitentiary, he prosecutes this appeal.

It appears that the court charged the jury that a half niece was within the prohibited degree of consanguinity within which persons are prohibited from marrying and cohabiting, and that co-habitation between the half-uncle and half niece would constitute the crime of incest.

The woman in the case, Annie Lee Jackson, is the daughter of defendant's half-brother.

In the bill of exception, filed to the judge's charge, and on the motion for a new trial, the question arises whether one can co-habit with the daughter of his half-brother without being guilty of incest?

Incest is denounced by reference to articles 94 and 95 of the Revised Civil Code in terms as follows:

"Whoever shall knowingly intermarry, or co-habit without marriage, being within the degrees of consanguinity within which marriage is prohibited, by Articles 94 and 95 of the Civil Code, shall be deemed guilty of incest."

Act 78 of 1884.

Under the last of the just stated articles, "marriage is prohibited between brother and sister, whether of the whole or of the half-blood, whether legitimate or illegitimate, and also between the uncle and the niece, the aunt and the nephew."

It is urged, in behalf of the defendant, that in relation to brother and sister, the article 95 of the civil code cited *supra*, contains the explanatory phrase: "Whether of the whole or of the half blood; legitimate or illegitimate," and that with reference to the ascending or descending line there is the phrase, "whether legitimate or illegitimate," inserted in the preceding article 94, conveying a restricted meaning only as relates to "brother and sister" and the "ascending or descending line," but that the use of the words, "uncle" and "niece," without qualification, do not include within its terms "uncles" and "nieces" of the half-blood. In fine, that "brother," does not mean "half-brother" and that "uncle" does not include "half-uncle."

It is true that the compilers of our code inserted the qualifying words just stated. We incline to the opinion that "brother," and "sister," as used, would include brother and sister of the half-blood without the qualifying words of the articles of the code; that as relates to the crime charged, the half-blood are meant equally with the whole blood.

This view is sustained by a case decided in the State of Vermont, in which it was held, as indicated by the *syllabus* of the case, that the word "brother," as used in the statute, against incest, includes a brother of the half-blood.

State vs. Wyman, 59 Vermont, p. 527.

The same conclusion is arrived at under the civil law as administered in France. There, marriage is prohibited between brother and sister, without the qualifying words found in our code. 162 C. N. Dalloz, Repertoire De Legislation, Vol. 31, p. 222, says: L'art 162 porte, en consequence, "qu'en ligne collaterale le marriage est prohibe entre le frere et la soeur legitimes ou naturels, et les allies au meme degre." Peu importe, du reste, que les freres et soeurs soient ger-

mains, *consanguins* ou *uterins*; l'empechement est egalement absolu *dans ces divers cas.*

It is well known that the brothers who have the same father but a different mother are in French, brothers *consanguins.*

Two brothers who have the same mother, but not the same father are brothers, *uterins* that is, brothers of the half-blood.

The French authorities hold, that a statute prohibiting marriage between brothers and sisters, equally applies to brothers and sisters *consanguin* or brothers and sisters *uterins* only.

Why should not the same rule or canon of interpretation apply to nephews and nieces, as relates to full blood or half-blood?

Even if it should be conceded that too broad a meaning is given to the words "brother" and "sister," and that if used alone, they do not mean "brothers" and "sisters" of the half-blood; here in term brothers and sisters of the half-blood are included in the article followed by the words, "and also," which refer, as we take it, to uncle and niece and the qualifying words just preceding "of the half-blood." So, that in our view, it is as if the statute read: Marriage is prohibited between brother and sister, whether of the whole or half-blood, "and also" uncle and niece whether of the whole or the half-blood.

A brother, as defined, is one who has the same father and mother with another, or has one of them only. The daughter is a niece in either case.

The defendant complains of the information as being fatally defective. It charges that the defendant being the uncle of Annie Lee Jackson and within the "prohibitory degrees" of consanguinity, did unlawfully and feloniously, and knowingly, live and co-habit with his niece, naming her, without marriage, the "same being prohibited, and did knowingly and feloniously commit the crime of incest, and that the same has not been made known to an officer," etc.

The defendant says that he was not informed what the degrees of consanguinity are, nor what the statute prohibits, but, if "prohibitory" is construed to mean "prohibited," then the charge does not specify what is prohibited.

The use of the word "prohibitory" might well have been avoided. It none the less conveys the meaning of "prohibit," or "prohibited." The indictment also informs the defendant of the degrees of consan-

guinity within which marriage or concubinage is prohibited, by charging that he, the uncle, lived in concubinage with his niece. The statute fixes the limit in degrees which includes the uncle and the niece. The information sets forth the prohibited concubinage.

There was a plea of prescription filed. The information contains the usual averment that the offense was not made known to a competent officer to direct the investigation.

It does not appear, that any objection was raised to the court's action on this plea, or that the prosecution did not introduce the required evidence to negative the plea.

In the absence of a bill of exceptions, this court must assume that the plea of prescription was not sustained by the facts shown.

In his motion for a new trial, the accused alleged that he had newly discovered evidence to offer in his defense. The trial judge, for reasons stated and made part of the bill of exceptions, did not think, that the evidence was newly discovered, nor did he think that the defendant had used proper diligence. We accept as true his uncontradicted statement. State vs. Williams, 50th Ann.

We have given this case our most careful attention, and have found no grounds to reverse the verdict. We must say that the *minimum* penalty of the statute falls heavily on the defendant, who is a colored man, and his half-niece, a colored woman, but to the Board of Pardons consideration may be addressed that have no place here.

For reasons assigned, it is ordered, adjudged and decreed, that the verdict and sentence in this case be and they are affirmed.

