(No. 12724.—Judgment affirmed.)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* GEORGE BINGER, Plaintiff in Error.

*Opinion filed October 27, 1919.*

1. CRIMINAL LAW—*when record shows indictment was returned into open court.* The circuit court record shows that an indictment was returned into open court by the grand jury where the record shows that the return of the indictment was a part of the report of the grand jury made in open court, a full panel being present.

2. SAME—*Supreme Court will not weigh credibility of witnesses whose testimony is conflicting.* The Supreme Court will not sustain a conviction on a criminal charge when the evidence is improbable, unsatisfactory or reasonably doubtful, but it will not substitute its judgment for that of a jury in merely weighing the credibility of witnesses, where the testimony is conflicting.

WRIT OF ERROR to the Circuit Court of Menard county; the Hon. GUY R. WILLIAMS, Judge, presiding.

H. W. MASTERS, for plaintiff in error.

EDWARD J. BRUNDAGE, Attorney General, HENRY E. POND, State's Attorney, and SUMNER S. ANDERSON, (J. M. SMOOT, and J. L. LANING, of counsel,) for the People.

Mr. JUSTICE FARMER delivered the opinion of the court:

Plaintiff in error was indicted at the February term, 1917, of the Menard county circuit court for the crime of incest. Two indictments were returned, one charging the crime was committed November 25, 1914, and the other charging the same crime with the same prosecutrix was committed March 8, 1916. A trial was had under the last named indictment. The prosecutrix testified to three acts of sexual intercourse with plaintiff in error,—one November 25, 1914, one November 8, 1915, and one March 8, 1916. At the conclusion of the testimony, the court, on motion of

plaintiff in error, ruled the prosecution to elect which act would be relied on for a conviction, and the act of March 8, 1916, was elected. The jury returned a verdict finding plaintiff in error guilty. Plaintiff in error moved for a new trial and in arrest of judgment. Both motions were overruled and judgment rendered on the verdict, sentencing the plaintiff in error to the penitentiary. He has sued out a writ of error to review the judgment.

The errors assigned and argued are that the court erred in overruling the motion in arrest of judgment because the record does not show the indictment was returned into open court by the grand jury, that the evidence was not sufficient to justify the verdict, and that the court committed reversible error in giving People's instruction No. 5.

In support of the claim that the court erred in overruling the motion in arrest plaintiff in error relies on the record as it is written in volume "G" of the circuit court records. On page 261 the record recites that February 7, 1917, the court convened pursuant to adjournment; that the grand jury came into open court, a full panel being present, "and present the following" to the presiding judge. Then follows a report on the condition of the jail, consisting of three and a half lines, signed by the foreman, and immediately following on the next page, with no change of date and clearly as a part of the report, appear two cases entitled People *vs.* George Binger, Incest. One is No. 722, the other No. 723, and following the title of each one the record reads, "The grand jury report indictment indorsed 'a true bill.'—H. J. Marbold, foreman," bail fixed, *capias* ordered and continued by consent. The return of the indictment was a part of the report of the grand jury made in open court, a full panel being present, the record of which report begins on the page preceding that on which the return of the indictment is shown. The record shows the indictment was returned into open court by the grand

jury. *Gahan* v. *People*, 58 Ill. 160; *Kelly* v. *People*, 132 id. 363; *People* v. *Dennis*, 246 id. 559.

Instruction No. 5 given on behalf of the prosecution was as follows:

"The court instructs the jury that if you believe that any witness or witnesses has or have willfully or corruptly sworn falsely as to any material fact in issue in this case, you have the right to disregard the entire testimony of any such witness or witnesses except in so far as such witness or witnesses may have been corroborated by the evidence of other credible witnesses or by facts and circumstances appearing in evidence."

It does not appear that the correctness of the instruction was challenged in the motion for a new trial, and the action of the court in giving it is complained of for the first time in this court. At all events there was no substantial inaccuracy in the instruction.

We come now to the question of the sufficiency of the evidence. It is argued with much earnestness by counsel for plaintiff in error that the evidence did not warrant the verdict and the judgment. On account of the deplorable nature of the case and the revolting character of the testimony we feel justified in not setting out the substance of the evidence. The plaintiff in error is a half-brother of the mother of the prosecuting witness, she therefore being his niece of the half blood. The prosecutrix was born in 1898 and was sixteen years old at the time she testified the first act of sexual intercourse occurred between her and plaintiff in error, in November, 1914. The last act she testified occurred March 8, 1916. Plaintiff in error was a single man and at the time of the trial was thirty-seven years of age. Plaintiff in error, his mother and unmarried sister lived together on a farm. The prosecutrix lived with her parents on a farm about a half mile distant from plaintiff in error. The prosecutrix testified she had twice become pregnant by plaintiff in error; that she had a premature

birth July 2, 1915, and a miscarriage in July, 1916. Her last pregnancy resulted from the act of intercourse with plaintiff in error on March 8, 1916. It is apparent from the testimony that the prosecutrix became the subject of some gossip in the neighborhood, and there was some talk about her having been delivered prematurely of a child, which was buried on the farm plaintiff in error was residing on. Plaintiff in error had made statements that the brother of the prosecuting witness was the author of her trouble, and he testified on the trial that such was the fact and that he had twice discovered them in the act. The plaintiff in error and the prosecutrix's brother and other members of her family had had some trouble prior to the fall of 1916. At that time,—the fall of 1916,—he and a brother of the prosecutrix had an altercation which grew out of some dispute over money matters and also the charge made by the plaintiff in error against prosecutrix and her brother, during which altercation prosecutrix's brother shot and wounded plaintiff in error. The brother was arrested on a charge of assault to commit murder, and at the preliminary hearing the prosecuting witness testified as to her relations with the plaintiff in error. She claims to have previously informed her mother of it. It was after this preliminary hearing that the indictment was returned in this case.

Counsel for plaintiff in error argues with some plausibility and much earnestness that the prosecuting witness is shown by her testimony to be unreliable and untruthful, and that the motive for making the charge against plaintiff in error was to help her brother to escape conviction on the charge of assaulting and shooting the plaintiff in error. Some things in the story told by the prosecutrix, it must be admitted, cast doubt on her entire truthfulness, but the same is also true of the testimony of plaintiff in error, who emphatically denied he had ever sustained illicit relations with the prosecutrix. The jury were warranted by the evi-

dence in concluding she had sustained such relations with
some man, and aside from the testimony of the plaintiff in
error there was no proof to cast suspicion upon anyone else
than plaintiff in error. We are impressed from an exami-
nation of the testimony that he was no more worthy of
belief than the prosecutrix. It was a question of the credi-
bility of witnesses and the weight to be given their testi-
mony. The proof for the prosecution, if believed, sustained
the verdict. It is to be expected that persons who would
commit the crime charged in the indictment would not be
of high character or possess a high, or even average, de-
gree of mentality. That human beings could be guilty of
such an offense seems almost incredible to right-minded
people, but that, alone, would not warrant an acquittal of
one charged with such a crime, for we know that such of-
fenses do occur. There was that in the testimony of the
plaintiff in error which cannot but cast suspicion upon his
credibility, and, as we have before stated, the same is true
also of some of the story told by the prosecutrix. This
court will not sustain a conviction on a criminal charge
when the evidence is improbable, unsatisfactory or reason-
ably doubtful, but it will not substitute its judgment for
that of a jury in merely weighing the credibility of wit-
nesses, where the testimony is conflicting. *People* v. *Mc-
Cann,* 247 Ill. 130; *People* v. *Conners,* 246 id. 9; *People*
v. *Feinberg,* 237 id. 348; *People* v. *Horchler,* 231 id. 566.

There is nothing in the record to indicate that anything
occurred on the trial to excite the passion and prejudice of
the jury, and no charge of that kind is made. If the story
told by the prosecutrix was true and the jury believed it,
the verdict was warranted. It was not if the story told by
the plaintiff in error was believed by the jury. The prose-
cutrix and the defendant only know the absolute truth,
but some other testimony had a tendency to corroborate or
contradict both. It was peculiarly a case depending on
the credibility of the witnesses and the weight to be given

their testimony, and we would not be authorized to reverse the judgment because the jury believed the testimony for the prosecution and based their verdict thereon.

The judgment is affirmed.    *Judgment affirmed.*